UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-608322-CR-COHN

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

RAOUL WEIL,

        Defendant

_____/

### RAOUL WEIL'S MOTION TO COMPEL THE GOVERNMENT TO IMMEDIATELY DISCLOSE ALL *BRADY* AND *GIGLIO* MATERIAL AND PRODUCE A BILL OF PARTICULARS

       Raoul Weil respectfully requests that the Court order the government to turn over all *Brady* and *Giglio* material immediately and provide the Defense with a bill of particulars. The Defense has spent thousands of hours over the past four months combing through the more than four million pages of largely irrelevant and virtually unsearchable discovery that the government produced to Mr. Weil. In all of that time, the government has failed to comply with its constitutional *Brady* obligations and this Court's Standing Discovery Order, make any timely effort to reduce the significant burden imposed by the government's mammoth and technically deficient document production, or even provide assurance that it has reviewed all of its own records for exculpatory information.

       The government should be required to fulfill its obligations now so that Mr. Weil can prepare a meaningful defense in advance of trial. Unless the government promptly

1

discloses all *Brady* and *Giglio* material and the names of Mr. Weil's alleged co-conspirators, Mr. Weil will be severely prejudiced in his ability to prepare for trial.  The information sought via this motion is the minimum that the law requires the government to provide, and we respectfully ask the Court to order the government to comply without further delay.

**BACKGROUND**

The government has produced an extraordinary volume of discovery in this case.  In many circumstances, one could conclude that the government has opened its files to the Defense.  Unfortunately, that is not the case here.  The government has produced approximately four million pages comprising hundreds of thousands of separate documents, the vast majority of which the government obtained *after* Mr. Weil's indictment and thus could not possibly have contributed to the government's decision to indict him.  *See* Declaration of Aaron R. Marcu (the "Marcu Declaration") ¶¶ 7, 11.  Indeed, the bulk of the discovery received to date appears to be irrelevant to the government's case against Mr. Weil.  Adding to the burden on the Defense, the productions are marred by technical problems that have materially impeded the Defense's ability to prepare for trial.  *See* Marcu Decl., Ex. G, Letter from Aaron R. Marcu to Mark Daly (April 10, 2014) (the "Discovery Letter") at 2.

For example, as we repeatedly informed the government during meetings and in writing, the documents that the government produced, nearly all of which are in electronic form, are missing associated metadata (i.e., standard data associated with electronic documents such as the date, time, author and recipients of e-mail), and were initially produced without electronic document breaks to indicate where within the

2

sweeping morass of pages each document begins and ends. The production thus was akin to producing thousands of separate documents as continuously flowing ten-thousand page scrolls. *See* Marcu Decl. at ¶¶ 13-16. Although the government – after three months and multiple requests – eventually provided a streamlined production that contained document break information, the material delay in providing the data in a reviewable form and the lack of metadata have significantly hampered the Defense's ability to sort, organize, review, and search for potentially relevant documents. *Id.* ¶¶ 13, 20.

Due to both the volume and defective nature of the government's productions, the substantive review of the documents has been a painstaking and time-consuming process. Exacerbating this situation, in order to follow up on leads obtained from the documents or elsewhere, additional time and effort are required since nearly all of the relevant witnesses and documents are located in Switzerland or otherwise outside the United States. The Defense has attempted, with little success, to elicit information from the government that would make the review of the four-million-plus-page production less burdensome and time consuming by asking the government to prioritize the production of key discovery items like witness statements. *Id.* ¶¶ 8-9, 14, 16-19, 21-22. The government initially indicated that it would produce witness statements as soon as Mr. Weil was extradited, but it subsequently changed its mind – for obvious tactical reasons – and to date has produced no witness statements. *Id.* ¶¶ 6, 23-25. This gamesmanship threatens to imperil the October 14 trial date set by the Court, which is why we make this motion now, nearly two months ahead of the date the Court set for pre-trial motions.

On nine separate occasions since December 2014, we have asked the government in in-person meetings, teleconferences, emails, and voicemails to produce witness

3

statements and other *Brady* material. *Id.* ¶¶ 6, 8-9, 14, 16, 18-19, 21-22. Finally, after months of frustration, on April 10, 2014, we sent a letter to the government reiterating our request for the immediate production of all *Brady* and *Giglio* material and seeking greater particularity concerning the charges in Mr. Weil's Indictment. Discovery Letter ¶¶ 8, 15. The government said it would respond to our letter in writing, but more than six weeks passed without its doing so. Marcu Decl. ¶¶ 19, 23. After failing to return multiple follow-up voicemails and emails urging a reply, the government finally responded on May 23, 2014, and said that, based on its considerably narrower view of *Brady*, it has found no *Brady* material in its possession; the government further stated that it would produce witness statements, all of which it considered to be mere Jencks Act material, only when required. *Id.* ¶ 24-25.

## ARGUMENT

### I.

### THE GOVERNMENT SHOULD IMMEDIATELY PRODUCE ALL EXCULPATORY MATERIAL

The government has been in possession of the key evidence in this case for more than five years. The only conceivable reason it has thus far failed to turn over exculpatory witness statements is to gain a strategic advantage. The government's conduct violates *Brady*, the Court's Standing Discovery Order, and Local Rule 88.10(q). *See* Standing Discovery Order at 2-3 (requiring the government to produce to the defense any *Brady* and *Giglio* material); S.D. Fla. L.R.88.10(q)(2) ("[d]iscovery which is to be made in connection with trial shall be made not later than fourteen (14) days after the arraignment or such other time as ordered by the court").

The Eleventh Circuit has recognized that *Brady* and *Giglio* material must be produced "in time to permit defense counsel to use it effectively." *United States v. McAnalley*, 535 F. App'x 809, 814 (11th Cir. 2013) (citation omitted) (quotation omitted). The Department of Justice's own rules likewise require that "[e]xculpatory information, regardless of whether the information is memorialized, must be disclosed to the defendant *reasonably promptly* after discovery." United States Attorney's Manual, Criminal Resource Manual § 165 (incorporating Memorandum by Deputy Attorney General David W. Ogden, *Guidance for Prosecutors Regarding Criminal Discovery* (Jan. 4, 2010) ("U.S. Attorney's Manual") (emphasis added)).

Given the July 11, 2014, motion deadline and the severe geographic challenge of following up leads overseas, in order to make effective use of the *Brady* and *Giglio* material, Mr. Weil needs the material now. In particular, the government conducted witness interviews more than five years ago, yet the government insists that it will provide the statements only when required to do so, presumably meaning with the minimum notice prescribed by the Jencks Act, 18 U.S.C. § 3500, or an order of this Court. *See* Marcu Decl. ¶¶ 16, 25. The witness statements and interview notes we seek, however, are not only prior statements of government witnesses; they also contain *Brady* material and thus are immediately discoverable. *See, e.g.*, *United States v. Snell*, 899 F. Supp. 17, 21 (D. Mass. 1995) (ordering the immediate production of *Brady* material that were also Jencks Act witness statements because "[i]t is inconceivable that a statutory obligation should supersede a constitutional one, especially where even the statutory obligations has [sic] a constitutional Due Process basis.").

5

For example, one of the non-prosecution agreements that the government produced reveals a few details of the required cooperation of Martin Liechti, the government's principal witness, who previously served as head of UBS AG's ("UBS") Americas International Wealth Management division. *See* Marcu Decl., Ex. D, Letter from Kevin M. Downing to David M. Zornow *re Martin Liechti* (July 2, 2008). Liechti's non-prosecution agreement requires him to "provide to the United States government the names and identification information of UBS AG clients who had or have undeclared accounts with UBS AG." *Id.* at ¶ 5. Liechti's knowledge of the names and identification information of UBS clients who had "undeclared accounts" appears to be a tacit admission that Liechti participated in conduct that the government views as illegal. This is both *Giglio* and *Brady* material. *See Arnold v. McNeil*, 622 F. Supp. 2d 1294, 1309-20 (M.D. Fla. 2009) *aff'd and adopted sub nom Arnold v. Sec'y, Dep't of Corr.* 595 F.3d 1324 (11th Cir. 2010) (holding that the government violated *Brady* by failing to disclose a government witness's criminal conduct, "the very same kind for which [the Defendant] was arrested and prosecuted."). It also reflects a conclusion consistent with the Swiss Federal Banking Commission's ("EBK") independent investigation into UBS's U.S. cross-border banking business, which found that Liechti and those who reported to him were responsible for the "severe misconduct" that led UBS to enter into a deferred prosecution agreement with the United States in February 2009. Marcu Decl., Ex. A, Swiss Financial Market Supervisory Authority, *EBK Investigation of the Cross-Border Business of UBS AG with its Private Clients in the US* (Feb. 18, 2009) at 13.

In fact, after an exhaustive document review and extensive interviews of all the key UBS employees, including Mr. Weil and Liechti, the EBK concluded that Liechti and

6

the other line managers of the North American business "partially expected and partially at least tolerated" the Bank's "severe misconduct." The EBK did not, however, find "*any indications in the course of its extensive investigation that would lead to the conclusion that [Mr. Weil or other senior executives] were accessories or accomplices [to UBS's] violations.*" *Id.* at 13, 16 (emphasis added). The EBK's unqualified statement that it did not uncover "any indication" of Mr. Weil's involvement strongly suggests that Liechti did not implicate Mr. Weil in the misconduct in which Liechti acknowledged having participated in his interview with the EBK. That leaves two possibilities: Liechti either: (i) similarly acknowledged to the U.S. government, at least at some point during his four months in custody pursuant to a material witness warrant in 2008, that Mr. Weil was not involved; or (ii) gave conflicting information to the Swiss and U.S. authorities. The U.S. government's notes, memoranda, and other records of Liechti's statements thus necessarily constitute *Brady* material since they are either (i) directly exculpatory or (ii) evidence of an inconsistent statement. *See Kyles v. Whitley*, 514 U.S. 419, 446-453 (1995) (recognizing that the government's key witnesses' inconsistent statements constituted *Brady* material); *see also* Federal Judicial Center, *Benchbook for U.S. District Court Judges* at 183 (noting that the government must disclose "all statements made orally or in writing by any witness the prosecution intends to call in its case-in-chief that are inconsistent with other statements made by that same witness") (citing various authorities).

It is also highly likely that the government's notes and memoranda of its interviews of other witnesses contain *Brady* and *Giglio* material. The government has interviewed several individuals with knowledge of relevant events, and it is highly likely

7

that these individuals, particularly those who worked with Mr. Weil, made statements tending to show that Mr. Weil was not involved in Liechti's wrongdoing, that Mr. Weil is an individual of good character and/or that Liechti or others told them that UBS's U.S. cross-border wealth management business – which Liechti managed – was compliant with U.S. law.  *See* U.S. Attorney's Manual § 165 (mandating that "prosecutors generally must take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence" and noting that such exculpatory information must be "disclosed reasonably promptly after it is discovered").

Because the government has been unwilling to comply with its *Brady* obligations, Mr. Weil respectfully requests that the Court order the government to produce immediately to Mr. Weil and his counsel all notes and memoranda of witness interviews. Potential witnesses are scattered internationally, and the Defense must be able to identify such individuals within a reasonable time before trial in order to have "sufficient time for 'full exploration and exploitation.'"  *United States v. Lino*, No. 00-CR-632 (WHP), 2001 WL 8356, at *13-17 (S.D.N.Y. Jan. 2, 2001) (confirming that witness statements constitute exculpatory evidence under *Brady* and ordering immediate disclosure of certain statements to the defense); *see also United States v. Porto*, 06-60318-CR, 2008 WL 4186985 (S.D. Fla. Sept. 5, 2008) (ordering the government to produce *Brady* and *Giglio* material within three days of the Court's order following a defendant's motion to compel).

The potentially helpful materials to be produced to Mr. Weil should also include interview notes of potential witnesses (even if the government does not intend to call the witness at trial), witness statements, unrecorded statements about which the government

8

has knowledge, and any offer of benefit – whether monetary or of personal liberty or non-prosecution – to induce potential witnesses to provide favorable testimony to the government. *See United States v. Bagley*, 473 U.S. 667, 682-84 (1985) (holding that the government must disclose inducements offered to potential witnesses); *United States v. Rodriguez*, 496 F.3d 221, 222 (2d Cir. 2007) (noting that the government "does not avoid the obligation under *Brady*/*Giglio* to disclose the information by not writing it down.").

## II.

### THE GOVERNMENT SHOULD CERTIFY THAT IT HAS REVIEWED ALL MATERIALS THAT POTENTIALLY CONTAIN *BRADY* OR *GIGLIO* INFORMATION

In light of the fast-approaching July 11, 2014, motion deadline, the government should be required to certify in writing by June 11, 2014, that it has complied with its obligations under *Brady*, its progeny, and this Court's Standing Discovery Order by reviewing all materials that potentially contain *Brady* or *Giglio* information. *See, e.g.*, *United States v. Rodriguez*, No. 10-20613-CR, 2011 WL 666136, at *3 (S.D. Fla. Feb. 13, 2011) (holding that "it is appropriate to require the Government to furnish [a *Brady* certification] in writing."). In its certification, the government should be required to represent that it has reviewed the following categories of materials that could contain exculpatory information:

1. All files, notes, and electronic communications made or kept by Kevin Downing, former Senior Litigation Counsel in the DOJ Tax Division, who was the principal government attorney leading the UBS investigation, and his team, including other prosecutors, superiors, specialists, or law enforcement agents;

2. Any files in the possession, custody or control of the Securities and Exchange Commission related to the SEC's investigation of UBS or any other related investigations; and

    3.  Any communications between any government agent – including but not limited to FBI agents, representatives of any U.S. Attorney's Office, the DOJ Tax Division, the IRS, or the SEC – and any alleged co-conspirator, UBS representative, or defendant in a related case.

### III.

### THE GOVERNMENT SHOULD PROVIDE A BILL OF PARTICULARS, INCLUDING THE NAMES OF ALL ALLEGED CO-CONSPIRATORS

Given the scope of the indictment combined with the enormous volume of discovery, the government should provide Mr. Weil with a bill of particulars so that Mr. Weil can adequately prepare for trial. The Defense currently has no choice but to review every one of the four-million-plus pages produced by the government, guess at each document's potential relevance, and speculate over fundamental issues such as whether any of the thousands of client account records produced refer to an alleged co-conspirator or witness that the government plans to call at trial. The government's obligations under *Brady*, *Giglio*, and Rule 16 exist in order to give Mr. Weil a fair and adequate opportunity to prepare for trial and should not be used by the government to bury the Defense in false leads and millions of pages of irrelevant discovery. Although in garden variety conspiracy cases it may be sufficient to provide more generic information, "in a complex case with voluminous unorganized discovery, a bill of particulars is particularly necessary to avoid surprise at trial." *United States v. Aispuro*, CR08-2936 JB, 2010 WL 1404196, at *6 (D.N.M. Mar. 16, 2010); *see also United States v. Mahaffy*, 446 F. Supp. 2d 115, 120 (E.D.N.Y. 2006) (stating that "a large volume of discovery warrants a bill of particulars if [such discovery] obfuscates the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial.").

10

For months, the government essentially ignored Mr. Weil's requests for meaningful information, including that the government identify by name all of Mr. Weil's alleged co-conspirators, specify the nature of Mr. Weil's alleged overt acts in furtherance of the alleged conspiracy for the handful of alleged overt acts attributed to Mr. Weil in the indictment, and provide the locations within the Southern District of Florida where the alleged fraud occurred.  *See* Discovery Letter ¶ 8.  Mr. Weil has the right to be informed of "the charge against him with sufficient precision to allow him to prepare his defense [and] to minimize surprise at trial."  *United States v. Warren*, 772 F.2d 827, 837 (11th Cir. 1985).  Mr. Weil has not been given even the minimal quality of precision that would enable him to prepare his defense.  Accordingly, the government should provide Mr. Weil with a bill of particulars setting forth the limited additional information requested by the Defense.  *See id.*; *United States v. Florida W. Int'l Airways, Inc.*, 10-20864-CR, 2011 WL 8866021, at *4 (S.D. Fla. Sept. 13, 2011) (ordering the government to immediately inform the Defense of the identities of the participants in the alleged conspiracy and the identities of any unindicted coconspirators).

\*   \*   \*   \*

For the reasons stated above, Mr. Weil respectfully requests that the Court order the government to immediately provide all records of witness statements and other *Brady* and *Giglio* material, to certify to the Court that it has reviewed its files for exculpatory material, and to provide the Defense with a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure.

              Respectfully submitted,

              Aaron R. Marcu, *pro hac vice*
              Kimberly Zelnick, *pro hac vice*

        FRESHFIELDS BRUCKHAUS DERINGER LLP
        601 Lexington Avenue
        New York, NY 10022
        Telephone: 212.284.4954
        aaron.marcu@freshfields.com
        kimberly.zelnick@freshfields.com

        David S. Mandel
        MANDEL & MANDEL LLP
        1200 Alfred I. duPont Building
        169 East Flagler Street
        Miami, Florida 33131
        Telephone: 305.374.7771
        dmandel@mandel-law.com

By: */s/ David S. Mandel*_____
    David S. Mandel
    Florida Bar No. 38040

    *Counsel for the Defendant Raoul Weil*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed using CM/ECF with the Clerk of the Court and all Counsel of Record on this 23rd day of May, 2014.

      By: /s/ David S. Mandel_____