## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 08-CR-60322-JIC

**UNITED STATES OF AMERICA,**

> **Plaintiff,**

**vs.**

**RAOUL WEIL,**

> **Defendant.**

_____/

### RESPONSE TO DEFENDANT'S MOTION FOR JURY INSTRUCTION

The United States of America, by undersigned counsel, respectfully submits this response in opposition to Defendant Raoul Weil's Motion for Jury Instruction (D.E. 57) ("Mtn."). The defendant's motion, requesting a preliminary jury instruction on the Qualified Intermediary Agreement ("QI Agreement") between UBS AG and the IRS, suffers from several flaws. In large part, the defense justifies its request for a preliminary instruction on irrelevant grounds: supposed misleading statements in press releases and in Congressional reports, and not even press releases or reports about this case, but about other cases. And although particularly inappropriate as a preliminary instruction, the proposed instruction is unfit to be given at any time: it would be confusing and prejudicial, ignoring the settled case law on conspiracy, implying that violating the QI Agreement was a necessary element of conspiracy, and giving something that is not even an element of the offense top billing before the trial began. Accordingly, the defendant's motion should be denied.

## I.      Background

A grand jury returned an indictment charging Raoul Weil with one count of conspiring to defraud the United States with respect to federal income taxes, in violation of 18 U.S.C. § 371.  That means he is charged with conspiring "to interfere with any of [the federal government's] lawful governmental functions by deceit, craft, or trickery." Eleventh Circuit Pattern Criminal Jury Instruction 13.6 (2010).

While the United States must prove that at least "one of the conspirators knowingly engaged in at least one overt act," that overt act "may be entirely innocent when viewed alone," so long as it was committed "to accomplish some object of the conspiracy." *Id; see also, e.g., United States v. Campa*, 529 F.3d 980, 1002 (11th Cir. 2008) ("'the act can be innocent in nature, provided it furthers the purpose of the conspiracy'") (quoting *Iannelli v. United States*, 420 U.S. 770, 786 n. 17 (1975)); *United States v. Harris*, 20 F.3d 445, 451 (11th Cir. 1994) (an "overt act need not be criminal and it suffices if [an] innocent act furthers [the] criminal venture").

The QI Agreement that is the subject of the defense's proposed instruction is referenced in only four paragraphs of the 42-paragraph, 11-page indictment.  *See* Indictment, ¶¶ 15-19 (D.E. 3).  And the indictment itself makes clear that the QI Agreement required disclosure only for "United States clients who held an interest in United States securities in an account at Swiss Bank."[1]  *Id.* ¶ 15.

Nonetheless, because of alleged misstatements about the law regarding other cases and the alleged complexity of this case, the defense contends that a preliminary

---

[1] Though mentioned under a pseudonym in the indictment, subsequent documents have made it clear that "Swiss Bank" refers to UBS AG.

instruction is needed to avoid the risk that jurors will assume "that it is unlawful for

foreign banks (including UBS) to simply maintain so-called undeclared accounts." Mtn.

at 10. In particular, the defense asks that the Court give the following preliminary

instruction:

> Effective January 1, 2001, the IRS entered into an Agreement with UBS called the Qualified Intermediary Agreement (or "QI Agreement"). In the QI Agreement, the IRS recognized that because UBS is a Swiss bank, it could be prohibited by Swiss law from disclosing the names of its U.S. customers to the IRS.
>
> In recognition of this prohibition, the IRS agreed that UBS was not required to disclose all U.S. customer accounts to the IRS. UBS was required to disclose all U.S. customer accounts to the IRS. UBS was required to disclose only those U.S. customers who held U.S. stocks and bonds in their accounts; but UBS was not required to disclose accounts for U.S. customers who held no U.S. stocks or bonds in their accounts and instead held only foreign stocks or bonds. In this way, UBS would not violate Swiss bank secrecy law by disclosing the names of U.S. customers without those customers' authorization. Without that authorization, it is the legal obligation of a U.S. customer to declare his or her foreign accounts to the IRS, not the bank's obligation.
>
> The QI Agreement further provided that, if any U.S. customer of UBS elected not to have his or her identity disclosed to the IRS by UBS, UBS should take steps to ensure that such customers did not have any U.S. stocks or bonds in their accounts.
>
> Thus, under the QI Agreement, it was legal for UBS to maintain and not declare to the IRS certain accounts for U.S. customers.

Mtn. at 13. This instruction is a response to phantom concerns and, because of its

inaccuracies, would only sow confusion, not cure it. It would make this case about the

QI Agreement, not about the elements of the actual crime charged: conspiracy to defraud the United States.

> **II.    A Preliminary Instruction on the Qualified Intermediary Agreement is Unwarranted.**

There is, of course, nothing wrong in principle with giving preliminary instructions.  The Eleventh Circuit has pattern preliminary jury instructions.  These instructions cover the "basic principles of a criminal trial and the duties of the jury." Preface to the Pattern Jury Instructions, Criminal Cases, Eleventh Circuit (2010), at VII. Preliminary instructions are usually basic and general, giving the jury an introduction to the process of a criminal trial.  They certainly must be accurate and neutral.  The defense requests an extraordinary departure from this normal practice of giving basic, noncontroversial preliminary instructions and asks instead for an unusual and highly specific preliminary instruction on the QI Agreement.  But the defense fails to give an adequate justification for why this is needed in this case, referring instead to alleged misstatements about the law in commentary on other cases.

As grounds for this unusual request, the defense cites press releases issued by the Justice Department, interpreting these as having "suggested publicly that it was illegal for foreign financial institutions simply to maintain undeclared accounts."  Mtn. at 8.  The defense also refers to reports not even issued by federal prosecutors but rather released by the Senate, including "Tax Haven Banks and U.S. Tax Compliance," issued July 17, 2008, by the U.S. Senate Permanent Subcommittee on Investigations, which, the defense says, "failed to draw a clear distinction between the culpability of" U.S. taxpayers and foreign banks regarding undeclared accounts, *id.* at 9., as well as a report on Credit Suisse issued in February 2014, which the defense criticizes on similar grounds, *see id.* at 10.

Finally, the defense does at least refer to something related to *this* case: a private letter to defense counsel identifying UBS accountholders with undisclosed accounts as potential co-conspirators. *See id.* at 11. Based on this hodgepodge, the defense asserts that there is a need for a jury instruction, lest jurors become confused.

Press releases and non-Department of Justice reports on other cases, along with a letter to the defense that was not even made public, however, are a flimsy justification for the very specific preliminary jury instruction the defense requests. It is doubtful that many potential jurors will even be aware of the documents cited by the defense. To the extent that there is any confusion in the minds of potential jurors because of these public and non-public comments, there is a better vehicle to address the concern—voir dire. Voir dire is specifically designed to weed out potential biases or prejudices, including from pretrial knowledge or publicity. *See, e.g., Felker v. Turpin*, 83 F.3d 1303, 1310 (11th Cir. 1996) ("The purpose of voir dire examination is to allow the government and the defendant to evaluate and select an impartial jury"). There is no reason why voir dire should not allay the defense's exaggerated fears. Not only is voir dire sufficient in lieu of the instruction, the defense's proposal, as explained in detail below, will introduce a great deal of confusion and misinformation into the trial.

The defense also makes a brief effort to justify the preliminary instruction on the grounds of complexity. *See* Mtn. at 11-12. Once again, however, this amounts to an effort to misconstrue what is really at stake and to transform the case into a technical dispute about the QI Agreement, rather than a criminal trial about whether the defendant conspired to defraud the IRS. The elements of the offense of conspiracy, not the nuances of the QI regime, are the heart of the case. And this is not a case where a particular

substantive question of tax law is a key feature of the case.  Ultimately, the QI Agreement is but one facet of the case.

The cases cited by the defense also do not support the notion that a case such as this requires preliminary instructions about legal intricacies such as the substance of the QI Agreement.  For example, *United States v. Stein*, 429 F. Supp. 2d 648 (S.D.N.Y. 2006), which the defense cites, was, at the time, "said to be the largest criminal tax case in history." *Id.* at 651.  Accordingly, the Court found it appropriate to give "[p]reliminary instructions on the law as to the *elements* of the offenses charged." *Id.* (emphasis added).  By contrast, the defense here wants a specific instruction on a matter that is not even an element of the offense.  This would not "assist the jury by providing a framework against which to consider the evidence as it comes in." *Id.* at 652.  It would create a distorted and warped lens, in which the jury would view the whole case through the prism of a single piece of the picture.

### III.     The Proposed Instruction Conflicts with the Law on Conspiracy and Would be Confusing, Misleading, and Unfairly Prejudicial.

The defense's proposal is a good example of why preliminary instructions should be straightforward, explaining the basics of the trial process.  Instead of providing the jury with a simple roadmap for the trial, the defense's preliminary instruction would sow confusion and prejudice.  It would be an inappropriate instruction to give to the jury at any time, whether before, during, or after the evidence.  But the problems with the instruction are only exacerbated in the context of preliminary instructions, which will color the way that the jury views the presentation of the entire case.  Far from dispelling any misconceptions about the law, the proposed instruction would poison the well against the government from the beginning.

The first major flaw with the instruction is that it conflicts with the law on § 371, the statute that Weil is charged with violating.  It is well established that an overt act "'can be innocent in nature, provided it furthers the purpose of the conspiracy.'"  *Campa*, 529 F.3d at 1002 (quoting *Iannelli*, 420 U.S. at 786 n. 17 (1975)); *see also Harris*, 20 F.3d at 451 (an "overt act need not be criminal and it suffices if [an] innocent act furthers [the] criminal venture").  It is largely beside the point whether UBS could, as an abstract matter, maintain "undeclared accounts" without running afoul of the law.  The defendant is not being charged with violating the QI Agreement as some sort of freestanding crime: he is charged with conspiring with others to, among other things, help American taxpayers violate their own reporting requirements.[2]

Actions that are "innocent in nature" or that are in compliance with the QI Agreement, can still be part of an illegal, conspiratorial agreement prohibited by § 371.  The proposed instruction, however, suggests that undeclared accounts, if maintained in compliance with the Agreement, cannot be part of a conspiracy.  That flatly contradicts the Eleventh Circuit's case law on overt acts.

Additionally, the proposed instruction seems to conflate the QI Agreement with the elements of conspiracy.  It implies that violating the QI Agreement is a necessary condition precedent for a conviction and that Weil's guilt or innocence turns on the QI Agreement.  But if the elements of § 371 are met, Weil could be guilty of conspiracy even if UBS was fully and unquestionably compliant with the QI Agreement.  Conversely, a violation of the QI Agreement would not automatically mean that the defendant was criminally liable.  Compliance with the QI Agreement and compliance

---

[2] Which is not to say that the conspiracy did not also involve violations of the QI Agreement.

with the law against defrauding the United States may be related issues in this case, but they are still distinct issues.

In a similar vein, the instruction unduly highlights the QI Agreement, making what is only a slice of the case the centerpiece of the trial. It is not and the government need not prove a violation of the QI Agreement to carry its burden. Even if it were made clear that violation of the QI Agreement was not an element of conspiracy, the preliminary instruction still strongly implies that the one thing that really matters will be the QI Agreement and that the true question will be whether the QI Agreement was violated. This danger is especially present when the instruction is given at the outset. Singling out the QI Agreement at the beginning of the trial risks confusing the jury about what the case is about, creating a trial within a trial, and prejudicing the jury against the government's case by implying there is an additional element that the government must prove. The defense may try to make the QI Agreement their theory of the case, but that theory should not be given the Court's imprimatur at the introduction to the trial through a preliminary jury instruction.

Finally, the instruction is biased. Rather than reading like a neutral recitation of the law, the proposed instruction sounds like the advocacy piece that it is. The instruction characterizes the QI Agreement, for example, as meaning that the "IRS agreed that UBS was not required to disclose all U.S. customer accounts," and emphasizes that "it was legal for UBS to maintain and not declare to the IRS certain accounts for U.S. customers." Mtn. at 13. This phrasing makes assumptions and is loaded, implying that the bank and its employees are shielded from liability for accounts. The instruction says that it "it is the legal obligation of a U.S. customer to declare his or her foreign accounts

to the IRS, not the bank's obligation." *Id.*  Shorn of context, and particularly as a preliminary instruction, this makes it seem as though it was impossible for the bank or its employees to help those customers avoid their own legal obligations.  It seems to indicate, again, that only if the QI Agreement is breached can the defendant be found guilty.  Jury instructions, especially preliminary ones, should be fair, neutral, and impartial.  The defense wants the Court to place a thumb on the defense side of the scale from the very start.  The Court, of course, should refrain from giving the jury such a slanted instruction.

### IV.       Conclusion

The defense's alleged concerns about the jury being confused about the state of the law—largely because of Senate reports and press releases—rings hollow.  Nor is there any particular complexity here requiring initial clarification.  At the end of the day, the proposed preliminary instruction is a solution in search of a problem.  But the instruction is more than just unnecessary, it is incorrect.  Rather than curing misconceptions, it would create them.

For the reasons stated above, the motion should be denied.

Respectfully submitted,

TAMARA ASHFORD
ACTING ASSISTANT ATTORNEY GENERAL

By:        /s/ Mark F. Daly
           Mark F. Daly
           Senior Litigation Counsel
           Tax Division
           U.S. Department of Justice
           Attorney No. A5501435
           601 D Street, N.W. 7th Floor
           Washington, DC 20004
           Tel: (202) 514-5150
           Fax: (202) 616-1786
           Mark.F.Daly@usdoj.gov


           /s/ Jason Poole
           Jason Poole
           Court ID No. A5501525
           Trial Attorney
           Department of Justice, Tax Division
           Southern Criminal Enforcement Section
           601 D Street NW
           Washington, DC 20004
           Tel: (202) 514-5145
           Fax: (202) 514-0961
           jason.h.poole@usdoj.gov

**<u>Certificate of Service</u>**

I hereby certify that on July 25, 2014, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send an electronic notice of

filing to all counsel of record.


   <u>/s/ Jason Poole</u>
Jason Poole
Court ID No. A5501525
Trial Attorney
Department of Justice, Tax Division
Southern Criminal Enforcement Section
601 D Street NW
Washington, DC 20004
Tel: (202) 514-5145
Fax: (202) 514-0961
jason.h.poole@usdoj.gov