UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-60322-CR-COHN

UNITED STATES OF AMERICA,
    Plaintiff,

vs.

RAOUL WEIL,
    Defendant
_____/

## REPLY IN SUPPORT OF RAOUL WEIL'S MOTION FOR A PRELIMINARY JURY INSTRUCTION

Mr. Weil respectfully asks the Court to instruct the jury that, pursuant to the terms of the QI Agreement, it was lawful for UBS to open and maintain accounts for U.S. customers that UBS was not required to disclose to IRS. In its Response to Mr. Weil's Motion ("Government Response"), the Government does not quarrel with the Defense's interpretation of the QI Agreement; nor does it dispute that it has previously (and very recently) made incorrect statements concerning the lawfulness of a QI like UBS maintaining undeclared accounts. The Government nonetheless opposes the Defense's proposed instruction on the ground that such an instruction would focus the jury's attention on the QI Agreement, rather than the elements of the conspiracy offense with which Mr. Weil has been charged, thereby prejudicing the Government.

But the Government cannot be unfairly prejudiced by a correct recitation of the law, particularly one that elucidates a critical legal point that is sufficiently complex that the Government itself has repeatedly struggled to understand it. The Government's concern with respect to balance is a straw man: Mr. Weil is not asking the Court to give this and only this instruction at the start of the case. We expect that

the Court will summarize the charges for the jury, and the instruction we have proposed will help the jury to avoid misunderstanding UBS's obligations under the QI Agreement. Rather than risk the possibility of such a misunderstanding, the Defense respectfully asks the Court to give a short instruction at the outset of Mr. Weil's trial setting forth the undisputed view that it was legal for UBS to open and maintain undeclared accounts for U.S. customers.

### The Jury Should Be Instructed that UBS Was Permitted To Maintain Undeclared U.S. Customer Accounts.

While the Government opposes the Defense's proposed instruction, it does not dispute the substance, namely, that "the QI Agreement required disclosure *only* for 'United States clients who held an interest in United States securities in an account at [UBS].'" The Government even suggests that the Government has already acknowledged this legal principle in Mr. Weil's Indictment. *See* Gov't Response at 2 (emphasis added) (referencing Indictment ¶ 15, which in fact does not contain the delimiter "only" and thereby leaves open the possibility that UBS may also have had an obligation to disclose U.S. customer accounts that did not contain U.S. securities). Yet that very Indictment misstates the QI requirements by alleging, incorrectly, that UBS had 1099 reporting obligations for undeclared accounts. *See* Indictment ¶ 4 (alleging that UBS "assisted [undeclared] United States clients conceal the income earned on Swiss bank accounts by failing to report IRS Form 1099 information to the IRS"). Since the Government now agrees with the Defense regarding the lawfulness of undeclared accounts, it is difficult to see why the jury should not be so apprised or why such an instruction could be "biased" and "prejudicial." *See* Gov't Response at 1, 6, 8.

The Government's attempt to discount the centrality of the QI Agreement to Mr. Weil's case similarly defies logic: Mr. Weil has been charged with conspiring to

2

defraud IRS; the means and methods by which he is alleged to have directly perpetrated this fraud on IRS is by representing to IRS that UBS was in compliance with the QI Agreement when he knew that it was not.  *See* Indictment ¶ 16; *see also id.* ¶ 28 (alleging that Mr. Weil "knowingly failed to disclose to the IRS deficiencies . . . that were discovered after the completion of an internal [QI] audit").  Mr. Weil's Indictment – which otherwise contains remarkably few allegations concerning Mr. Weil's personal conduct – thus makes clear that Mr. Weil's alleged misrepresentation to IRS goes to "the heart of the case," namely the question of whether Mr. Weil participated in a conspiracy to defraud IRS.  Gov't Response at 5.  The Government witness statements and memoranda of interview that have been produced to date – which are replete with references to the QI Agreement – likewise confirm that the Defense is not seeking relief in relation to "phantom concerns."  *Id.* at 3.  Indeed, one witness's statement references the QI Agreement 45 times.  *See* Gov't Supp. Mot. For Protective Order Regarding Discovery (DE 66), Ex. A (filed by the Government under seal).

The Government does not dispute that the lawfulness of UBS's conduct under the QI Agreement, and Mr. Weil's good faith belief in the lawfulness of that conduct, are relevant to the issue of whether Mr. Weil "*knew* the unlawful purpose of the [conspiratorial] plan and *willfully* joined in it."  Pattern Jury Instructions, Criminal Cases, Eleventh Circuit at 181 (2010) (emphasis added); *see also United States v. Alvarez*, 610 F.2d 1250, 1256 (5th Cir. 1980) ("[E]ven if a conspiracy between two parties is established, not every act of a third person that assists in the accomplishment of the objective of the conspiracy is a sufficient basis to demonstrate his concurrence in that agreement.").  Although an innocent act may support a conspiracy conviction, such an act must have been performed with both willfulness and knowledge of the

3

plan's overall illegality.  Mr. Weil's subjective belief in UBS's compliance with the QI Agreement is central to determining whether he acted with the requisite criminal knowledge and willfulness.  To the extent that jurors misunderstand UBS's obligation under the QI Agreement, and wrongly believe that the mere existence of undeclared accounts is illegal, there is a risk that they will infer a guilty intent where none exists.

The Government's further contention that Mr. Weil's proposed instruction would skew the trial by forcing the jury to focus exclusively on the terms of the QI Agreement is also hard to understand.  *See id*. at 5-6, 8.  The Defense is not suggesting that a preliminary instruction on the QI Agreement be issued in a vacuum or that the jury should not be instructed on the other legal concepts.  Nor would an instruction that it was legal for UBS to maintain undeclared accounts for U.S. customers "transform the case into a technical dispute about the QI Agreement" (Gov't Response at 5); to the contrary, such an instruction would appropriately set the stage for what points are in dispute by informing the jurors that the lawfulness, *vel non*, of undeclared accounts is not.  Without a clarifying instruction of this kind, there is a risk that jurors may incorrectly assume – as the Government itself has – that UBS's mere maintenance of undeclared accounts was an unlawful act.

The Government's argument that an instruction is unnecessary because the *voir dire* process can be used to weed out any jurors with an incorrect view of the QI Agreement's terms misses the point.  *See* Gov't Response at 5.  Rather than use *voir dire* to weed out jurors who misapprehend the legality of undeclared Swiss bank accounts but who would otherwise be acceptable to both parties, it is more appropriate to correct the misimpression that some jurors may have acquired as a result of media attention that Swiss bank secrecy and undeclared accounts have received.

The Government's alternate ground for rejecting the Defense's proposed instruction – that the case is not sufficiently complex to justify a preliminary instruction (*id.* at 10) – is similarly unavailing.  The Government gives no explanation for this conclusion, nor could it.  These proceedings are highly complex: they involve a purported cross-border conspiracy, spanning over six years, involving thousands of mostly unnamed individuals in a case that raises issues of bilateral international treaties, U.S. conspiracy and tax law, and Swiss penal law.  The suggestion that this is a routine prosecution makes one wonder what kind of case the Government would regard as complex.  The Government attempts to distinguish *United States v. Stein*, 429 F. Supp. 648 (S.D.N.Y 2006), as a case of supposedly unique complexity, *see* Gov't Response at 6 – even though *Stein* involved a fraction of the co-conspirators alleged here – but is otherwise silent about the other authorities cited in Mr. Weil's motion.  As we noted in our moving papers, the courts in both *United States v. Assor*, No. 10-601599 (S.D. Fla. Oct. 7, 2010), and *United States v. Coplan*, No. 07-00453 (S.D.N.Y. Mar. 6, 2009), *see* Mot. at 12, gave preliminary instructions on the principles of tax law at issue, even though neither case entailed unique complexities that would distinguish them from the case at bar.

The Government's final argument – that the jury should not be instructed on the terms of the QI Agreement because a breach of the Agreement is not an element of the conspiracy offense charged should also be rejected.  *See* Gov't Response at 6.  The Government cites no authority for the proposition that a preliminary instruction should be restricted to the elements of the charged offense.  Indeed, that position would defy widely accepted practice.  Preliminary instructions typically address a wide range of legal principles and factual issues, including the standard and burden of proof, the nature of the evidence to be considered, and the facts that the Government must prove

5

in order to secure a conviction.  *See, e.g.*, Pattern Jury Instructions, Criminal Cases, Eleventh Circuit (2010).  Far from being constrained in their delivery of preliminary instructions, courts are encouraged to adapt their instructions to the particular circumstances of individual cases.  *See* Am. Bar Ass'n, *Standards Relating to Trial by Jury* § 15-4.4 (b) ("At the beginning of the trial, the court should give preliminary instructions to the jury *deemed appropriate for their guidance in hearing the case*, which [following consultation with counsel] may include instructions on the law of the case.") (emphasis added).

      The Government concedes, as it must, that there is "nothing wrong in principle" with giving preliminary instructions.  Gov't Response at 4.  But rather than proposing alternative language to ameliorate the supposed "flaws" in the Defense's proposed instruction, the Government rejects the need for a QI instruction outright.  Although the Government has not suggested it, Mr. Weil would not be opposed to some modification of the proposed language so long as the core substance – that the maintenance of undeclared accounts was not an unlawful act – is retained.  An accurate recitation of the law cannot reasonably be said "to place a thumb on the defense side of the scale."  Gov't Response at 9.  To the contrary, such an instruction, in light of the misimpression that at least some jurors are likely to have, means that both parties will be starting from a more level playing field.

6

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Mr. Weil's Motion for a Preliminary Jury Instruction, Mr. Weil respectfully requests that the Court instruct the jury at the outset of his trial that it was legal for UBS to maintain undeclared accounts for U.S. persons.

> Respectfully submitted,
>
> Aaron R. Marcu, *pro hac vice*
> Kimberly H. Zelnick, *pro hac vice*
> FRESHFIELDS BRUCKHAUS DERINGER US LLP
> 601 Lexington Avenue
> New York, NY 10022
> Telephone: 212.284.4954
> Fax: 646.521.5754
> aaron.marcu@freshfields.com
> kimberly.zelnick@freshfields.com
>
> Matthew Menchel
> Adriana Riviere-Badell (30572)
> KOBRE & KIM LLP
> 2 South Biscayne Boulevard
> 35th Floor
> Miami, FL 33131
> Telephone: 305.967.6100
> Fax: 305.967.6120
> matthew.menchel@kobrekim.com
> adriana.riviere-badell@kobrekim.com
>
> By: /s/ Matthew Menchel
>     Matthew Menchel
>     Florida Bar No. 12043
>
> *Counsel for the Defendant Raoul Weil*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 30, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I further certify that the foregoing document is being served on all counsel of record identified on the list below via transmission of Notices of Electronic Filing generated by CM/ECF.

Mark F. Daly
US Department of Justice
Tax Division
601 D Street NW
Room 7334
Washington, DC 20579
Telephone: 202.616.2245
mark.f.daly@usdoj.gov

Jason Poole
US Attorney's Office
Department of Justice, Tax Division
601 D. Street NW
Washington, DC 20004
jason.h.poole@usdoj.gov

By: /s/ Matthew Menchel