## JOINT STATEMENT OF THE CASE

This is a criminal case.

The indictment in this case charges the defendant, Raoul Weil, with conspiring with others to defraud the IRS (Internal Revenue Service). To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful government functions by deceit, craft or trickery, or at least by means dishonest. The conspiracy must be achieved through at least one overt act, even one which may be entirely innocent when viewed alone. In this case, the indictment alleges that the property or money is taxes owed to the IRS.

Mr. Weil formerly worked as a senior executive at UBS AG, one of the largest banks in the world, with headquarters in Switzerland and operations all over the world. At UBS, Mr. Weil, was the head of UBS's worldwide Wealth Management and Business Banking Division. In that position, Mr. Weil oversaw the operations of UBS's global wealth management business in more than 100 countries around the world, including in the United States. One part of the U.S. operations was UBS's U.S. cross-border banking business.

The indictment alleges that Mr. Weil, a Swiss citizen and resident, conspired with other UBS executives, managers and bankers, as well as U.S. clients with accounts at UBS in Switzerland. The indictment alleges that the object of the conspiracy was to increase the profits of UBS by providing unlicensed and unregistered banking services in the United States in order to conceal from the IRS the identities of UBS's U.S. clients who evaded their income tax obligations by filing false income tax returns and failing to disclose the existence of their accounts at UBS to the IRS. The indictment alleges that UBS's cross-border banking business included 20,000 U.S. clients with accounts containing assets worth approximately $20 billion. The indictment alleges that approximately 17,000 of those clients concealed their identities and the existence of their accounts from the IRS.

The indictment alleges that Mr. Weil knew that UBS's cross-border banking business with U.S. clients was operated in a way that violated U.S. law. The indictment alleges that, notwithstanding the violations, Mr. Weil and others instructed UBS employees to grow the business, and that Mr.

Exhibit A

==Weil and other UBS executives refused to wind down, spin off or sell the business with U.S. clients because it was too costly and would require public disclosures.==

UBS entered into a contract with the IRS called a Qualified Intermediary Agreement, or QI Agreement, in which UBS agreed to report to the IRS U.S. income and other identifying information for U.S. clients who held U.S. stocks and bonds in their UBS accounts, if those clients gave UBS permission to disclose their identities.  If the clients did not allow UBS to disclose their identities, the clients were required to sell their U.S. stocks and bonds or else UBS was required to withhold approximately 30% of any sale proceeds or income related to their U.S. stocks and bonds and anonymously pay the withheld amounts to the IRS.  The IRS recognized that UBS was prohibited by Swiss law from disclosing the names of its U.S. clients without the clients' permission and agreed that UBS would not be required to identify U.S. clients who held only foreign stocks and bonds in their accounts.  **[DEFENSE VERSION: The QI Agreement thus permitted UBS to open and maintain accounts containing only foreign stocks and bonds for U.S. clients without reporting those accounts to the IRS.  GOVERNMENT VERSION: The QI Agreement did not prohibit UBS from opening and maintaining accounts containing only foreign stocks and bonds for U.S. clients without reporting those accounts to the IRS.]**

The law requires U.S. taxpayers to report and pay tax on their worldwide income.  It is not illegal for a U.S. taxpayer to have a bank account in a foreign country.  It is illegal for a U.S. taxpayer to willfully fail to report to the IRS income from a foreign financial account as well the taxpayer's ownership and/or control over the foreign financial account.  It also is illegal for a U.S. taxpayer to fail to disclose the foreign financial account to the U.S. Treasury, if as the aggregate value of all the taxpayer's foreign accounts exceeded $10,000 in a calendar year.

Mr. Weil is presumed innocent until proven guilty.  The indictment brought by the government is only an accusation, nothing more.  It is not proof of guilt or anything else.  Mr. Weil therefore starts out with a clean slate.

The burden of proof is on the government until the very end of the case. The defendant has no burden to prove his innocence or to present any evidence, or to testify.

The government must prove the defendant's guilt beyond a reasonable doubt.

Mr. Weil has pleaded not guilty. Mr. Weil contends that he did not conspire with anyone to defraud the United States out of taxes. He contends that a small number of UBS employees who ran and worked in a small division of UBS may have assisted U.S. customers evade their U.S. tax obligations, but he contends that those employees hid their own misconduct by representing to him that the business they ran complied with both the QI Agreement and U.S. law.

11771225.1