UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-60322-CR-COHN

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

RAOUL WEIL,

       Defendant.

_____/

**DEFENDANT RAOUL WEIL'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OR ARGUMENT CONCERNING ALLEGED VIOLATIONS OF U.S. BANKING AND SECURITIES LAWS**

Defendant Raoul eil respectfully requests that the Court exclude evidence or argument concerning alleged violations by UBS AG ("UBS") and its employees of U.S. banking and securities laws. The Government has charged Mr. Weil with conspiring to defraud the Internal Revenue Service ("IRS") of taxes, not of violating the U.S. laws governing banks or investment advisors. Just because the Government has chosen to clutter the Indictment with reference to UBS employees providing "unlicensed and unregistered banking services and investment advice[,]" does not mean that evidence concerning those acts is relevant, or that the Government should be permitted to suggest that the acts were unlawful.

UBS's general compliance or non-compliance with U.S. banking and securities laws is neither an element of the *Klein* conspiracy alleged in the Indictment, nor is it

admissible under Federal Rule of Evidence 404(b) in light of, among other things, the Government's failure to give timely notice of its intention to introduce evidence regarding extrinsic acts. Moreover, it should be excluded under Federal Rule of Evidence 403, because there is a substantial risk that evidence or argument on these issues would unfairly prejudice Mr. Weil, confuse and mislead the jury, and waste a significant amount of this Court's time on a mini-trial concerning issues with little or no relevance to the question of whether Mr. Weil was part of any conspiracy to defraud IRS.

## BACKGROUND

The Government alleges that Mr. Weil was part of a conspiracy to defraud the United States in the "ascertainment, computation, assessment and collection of federal income taxes." Indictment ¶ 12 (DE 3). Stripped of embellishment, this involved:

- "conceal[ing] from the IRS the identities of [UBS] clients, who wilfully evaded their income tax obligations by, among other things, filing false income tax returns and failing to disclose the existence of their [UBS] account" to IRS;

- "[entering] into the QI Agreement and represent[ing] to the IRS that [UBS] was in compliance with the terms of the QI Agreement, while knowing that the United States cross-border business was not";

- "marketing Swiss bank secrecy to United States clients interested in attempting to evade United States income taxes"; and

- "assist[ing] United States clients in preparing IRS Forms W-8BEN that falsely and fraudulently stated that nominee offshore structures, and not the United States clients, were the beneficial owners of offshore bank and financial accounts maintained in foreign countries."

Indictment ¶¶ 12-13, 16, 19 & 22. It is only through reckless pleading that the Government is able to implicate unrelated aspects of UBS's business in the alleged conspiracy, asserting that "unlicensed and unregistered banking services and investment

2

advice" were "activities intended to conceal from the IRS the identities" of these clients and that "increase[ing] the profits of [UBS] by providing" these services was an "object" of the alleged conspiracy.  Indictment ¶ 13.

Nowhere in the Indictment, however, does the Government actually explain how any failure by UBS's "cross-border business" to comply with U.S. banking or securities laws facilitated (1) the concealment of the identities of UBS clients; (2) the wilful evasion of tax obligations; (3) the filing of false tax returns by taxpayers; or (4) the failure of U.S. taxpayers to disclose the existence of their UBS accounts, let alone that Mr. Weil agreed to assist these taxpayers in evading their tax obligations.  *See* Indictment ¶¶ 8, 9, 13, 17, 18, 20, 21, 36.  Indeed, the Government does not even allege which licensing and registration requirements UBS violated or what specific conduct crossed the line.  All the Indictment shows is that any failure by the UBS's U.S. cross-border business to comply with U.S. banking or securities laws has little probative value as to any question the jury must resolve.  Moreover, the confusion evident in the Indictment has not been helped by the Government's failure to provide proper notice to the Defense of how it intends to use evidence of alleged banking and securities laws violations, and what the general nature of that evidence might be, as the Government was required to do by Federal Rule of Evidence 404(b) and Local Rule 88.10.

## ARGUMENT

Evidence and argument concerning alleged violations of U.S. banking and securities laws should be excluded for two reasons.  First, as extrinsic evidence concerning the alleged *Klein* conspiracy, it is barred by Rule 404(b).  Second, even if it

3

were considered intrinsic, its probative value is still substantially outweighed by the risk that it will cause unfair prejudice to Mr. Weil, confuse and mislead the jury, and result in a significant waste of this Court's time on collateral issues.

**I.     Extrinsic Evidence Concerning UBS's Compliance or Non-Compliance with U.S. Banking or Securities Laws Is Inadmissible Under Rule 404(b)**

The Federal Rules of Evidence prohibit the use of evidence of "other crimes, wrongs, or acts . . . to prove a defendant's character in order to show action in conformity therewith." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (citing Fed.R.Evid. 404(b)) (such evidence may be admissible for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident"). The admissibility of extrinsic evidence for non-character purposes "stands and falls on the basis of its relevance to the elements of the *charged crime*, and nothing else." *United States v. Baker*, 432 F.3d 1189, 1207 n. 13 (11th Cir. 2005). That relevance depends on the extent to which the "extrinsic act requires the same intent as the charged offenses" and whether the "acts are proximate in time to the charged offenses." *Id.* at 1205-7 (drug-related murder that predated charged conspiracies by several years had no probative value in case involving drug- and firearm-related offenses).

Here extrinsic evidence concerning UBS's alleged violations of banking or securities laws has no relevance to any non-character issue in the case. While UBS's historical efforts to comply with U.S. banking and securities laws overlap with the time period relevant to the *Klein* conspiracy, the fact that the crime alleged in the Indictment involves alleged violations of a completely different legal regime saps that history of any probative value. *See, e.g., United States v. Jakeway*, 783 F. Supp. 590, 596 (M.D. Fla.

4

1992) (granting motion for new trial when government's case repeatedly conflated violations of ethical rules and regulations with acts proscribed by criminal law); *United States v. Christo*, 614 F.2d 486, 492 (5th Cir. 1980) ("After examining the record of the trial, one questions whether Christo was found guilty of wilful misapplication with intent to injure and defraud the bank or whether he was given eighteen concurrent 5-year sentences and fined $90,000 for overdrafting his checking account"). It is immaterial that the Government has laced the Indictment with allegations concerning violations of U.S. banking or securities laws because those are not essential elements of the alleged conspiracy to defraud IRS. *See Baker*, 432 F.3d at 1207 ("[j]ust because the government places . . . acts in the indictment does not magically make them elements of the conspiracy [charged]"); *see also United States v. Chandler*, 376 F.3d 1303, 1316-17 (11th Cir. 2004) (vacating conviction when government's proof showed multiple conspiracies and not the one vast conspiracy charged in indictment). UBS's alleged securities laws violations is also irrelevant to the question of motive, because the Government has not alleged at any point that any violations of U.S. tax laws were motivated by violations of U.S. banking or securities laws.

Finally, before the Government can introduce extrinsic evidence concerning UBS's alleged violations of U.S. banking or securities laws, it must give proper notice of its intention to do so and provide a general description of the nature of that evidence. Fed. R. Evid. 404(b); Local Rule 88.10. Despite a request for such notice that Defense submitted in April, this Court's Standing Discovery Order, and the plain language of Federal Rule 404(b) and Local Rule 88.10, the Government has not done so.

Thus, while the Defense was aware that the Government may introduce evidence concerning alleged violations of banking or securities laws, the Defense has been left guessing as to even the general type of evidence it might be forced to rebut or how such evidence could in any way be probative of the alleged conspiracy to defraud the IRS charged in the indictment. .  Given the complexity of the factual and legal issues that surround questions of compliance with banking and securities laws, this failure alone would justify the exclusion of evidence or argument on these topics.  *See, e.g., United States v. Daugerdas,* No. S3 09 CR. 584 (WHP), 2011 WL 573587, at *2 (S.D.N.Y. Feb. 16, 2011) (excluding evidence of unrelated transactions in complex tax fraud case because defense would require more than one month to prepare response).

II. **The Probative Value of UBS's Compliance or Non-Compliance with U.S. Banking or Securities Laws is Substantially Outweighed By the Risk of Unfair Prejudice and Other Rule 403 Concerns**

Even if this Court were to determine that certain facts related to UBS's compliance or non-compliance with U.S. banking or securities regulations were intrinsic to the tax conspiracy charged in the Indictment, that evidence would still have to comply with the requirements of Rule 403, as would any extrinsic evidence the Court determined was relevant to non-character issues..  *See Edouard*, 485 F.3d at 1344 (citing *Baker*, 432 F.3d at 1219 n. 36).  Thus, both intrinsic or extrinsic evidence may be excluded when its probative value is "substantially outweighed" by the risk that admission will cause unfair prejudice to the defendant, that the jury will be confused or misled, or that admission will result in wasting of the Court's time.  Fed.R.Evid. 403.  These concerns justify the exclusion of evidence or argument concerning UBS's alleged violations of U.S. banking or securities laws regardless of the purpose for which it is admitted.

For the reasons discussed above, evidence concerning UBS's compliance or non-compliance with U.S. banking or securities laws is of little probative value to the question of Mr. Weil's participation in a tax conspiracy. Presentation of evidence concerning UBS's compliance or non-compliance with the complex requirements of the U.S. banking and securities laws, however, will be inherently complicated and time consuming. Moreover, disputes regarding finer points of regulatory compliance may leave the jury with the false impression that because UBS did not adopt the Government's interpretation of certain statutes and regulations, UBS and its employees engaged in wrongdoing. For that reason, this Court and others have determined that it is often better to exclude such evidence entirely or, at a minimum, to sharply limit its use. *See, e.g., United States v. Knowles*, No. 00-425-CR-COHN/SNOW, 2007 WL 1246026, at *4 (S.D. Fla. Apr. 30, 2007) (admitting fact of prior dealings between co-conspirators but excluding criminal component); *see also United States v. Stein*, 521 F. Supp. 2d 266, 271-75 (S.D.N.Y. 2007) (excluding evidence concerning uncharged tax violations in tax fraud and *Klein* conspiracy case); *and Daugerdas,* 2011 WL 573587, at *2 (noting associated risks of confusion and delay when dealing with complex evidence); *United States v. Rajarantam*, No. S1 13 Cr. 211 (NRB), 2014 WL 2696568, at *3 (S.D.N.Y. June 10, 2014) (excluding evidence of other suspicious trading activity in insider trading prosecution). Notably, in *United States v. Kerr*, a criminal matter involving UBS accounts and alleged violations of securities laws, the District Court for the Arizona recently determined that while the Government could state, as a matter of fact, whether a defendant did or did not take certain actions, the Government could not characterize those

7

actions as "SEC violations and violation[s] of securities laws[.]" *United States v. Kerr*, 2:11-CR-02385 (Apr. 1, 2013) (Dkt.# 274) (attached as Ex. A).

*   *   *

Because evidence or argument concerning UBS's alleged failure to comply with U.S. banking and securities laws ultimately will be substantially more prejudicial than probative, and raises numerous other Rule 403 concerns, this Court should exclude it entirely.

## CONCLUSION

For the foregoing reasons, Mr. Weil respectfully requests that the Court issue an order excluding evidence or argument concerning alleged violations of U.S. banking or securities laws by UBS and its employees.

Respectfully submitted,

Aaron R. Marcu, *pro hac vice*
Kimberly Zelnick, *pro hac vice*
FRESHFIELDS BRUCKHAUS DERINGER LLP
601 Lexington Avenue
New York, NY 10022
Telephone: 212.284.4954
aaron.marcu@freshfields.com
kimberly.zelnick@freshfields.com

Matthew Menchel
Adriana Riviere-Badell
KOBRE & KIM LLP
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 1.305.967.6108
mathew.mandell@kobrekim.com

By: /s/ Matthew Menchel
Matthew Menchel
Florida Bar No. 12043

*Counsel for the Defendant Raoul Weil*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 6, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I further certify that the foregoing document is being served on all counsel of record identified on the list below via transmission of Notices of Electronic Filing generated by CM/ECF.

Mark F. Daly
US Department of Justice
Tax Division
601 D Street NW
Room 7334
Washington, DC 20579
Telephone: 202.616.2245
mark.f.daly@usdoj.gov

Jason Poole
US Attorney's Office
Department of Justice, Tax Division
601 D. Street NW
Washington, DC 20004
jason.h.poole@usdoj.gov

By: /s/ Matthew Menchel